IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 14, 2009

**BILLY RAY FARRIS v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Chester County**
**No. 07-4599      Roy B. Morgan, Jr., Judge**

<hr/>

**No. W2008-02633-CCA-R3-PC - Filed June 17, 2010**

<hr/>

Petitioner, Billy Ray Farris, pled guilty in the Chester County Circuit Court to second degree murder, and he received a sentence of twenty-five years in the Tennessee Department of Correction. Thereafter, he filed a petition for post-conviction relief, alleging that his trial counsel was ineffective and that his guilty plea was not knowingly and voluntarily entered. The post-conviction court denied the petition, and Petitioner appeals. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Angela J. Hopson, Jackson, Tennessee, for the appellant, Billy Ray Farris.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; James G. Woodall, District Attorney General; and Alfred Lynn Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

The record reflects that on June 27, 2006, the first day of Petitioner's trial, he pled guilty to second degree murder. On April 16, 2007, Petitioner filed a pro se petition for post-conviction relief, alleging that his trial counsel was ineffective and that his guilty plea was not knowingly and voluntarily entered. Counsel was appointed, but no amended petition for post-conviction relief was filed.

At the post-conviction hearing, Petitioner testified that he was charged with the first degree premeditated murder of his wife. Petitioner said trial counsel was appointed to represent him but met with him only five times. Petitioner complained the amount of contact with counsel was insufficient and negatively impacted his case. However, he acknowledged he told trial counsel everything he could about the case and did not know what could have been accomplished with more meetings.

Petitioner contended that he supplied trial counsel with the names and contact information of "character witnesses" who could have testified regarding the events of the day leading up to his shooting of the victim. Petitioner complained that counsel did not interview these witnesses. However, he conceded that the witnesses were not present during the shooting and therefore did not know the details of the crime. Petitioner said counsel did not issue subpoenas for witnesses in a timely fashion, noting that his daughter and son-in-law received subpoenas on the day trial was slated to begin. Petitioner stated that counsel did not file all of the motions Petitioner wanted filed. Petitioner stated that he wanted counsel to file for a change of venue and for an "extended" mental evaluation. Petitioner acknowledged that counsel filed a motion for change of venue, but it was denied by the trial court. Additionally, Petitioner acknowledged that an evaluation done while his case was in general sessions court revealed that he was competent to stand trial and that the defense of insanity could not be supported. Petitioner did not state what further evaluation would have revealed nor did he state specifically the motions counsel failed to file.

Petitioner said if counsel had investigated his case more thoroughly, Petitioner might have been found guilty of an offense lesser than first degree murder or second degree murder. Petitioner noted that counsel explained the different types of homicide and the accompanying sentences. Petitioner said he believed the defense strategy was to show that he had committed a "crime of passion," namely voluntary manslaughter which was subject to a sentence of three to six years.

Petitioner said that during the pendency of the case, he and trial counsel discussed the possibility of a guilty plea. According to Petitioner, trial counsel advised him not to enter a guilty plea due to the length of the sentence offered. However, on the first day of trial after the jury was chosen, trial counsel advised Petitioner to enter a guilty plea to second degree murder. Petitioner said that trial counsel's advice changed based upon "new evidence," but Petitioner did not know the nature of the new evidence. Petitioner said the State apparently had evidence that was not provided in discovery. Petitioner acknowledged that the proof against him at trial included an officer's testimony about discovering the victim's body, his ex-wife's testimony that Petitioner called her and admitted killing the victim, and an inmate's testimony that Petitioner said the killing was intentional.

Petitioner said he signed the plea agreement, but he never read the form and trial counsel never went over the form with him. Petitioner recalled that at the plea hearing, the trial court informed him that he was receiving a twenty-five-year sentence at one hundred percent. Petitioner stated that he understood that he was receiving a twenty-five-year sentence. However, he said counsel informed him that with "good time" credits he would have to serve half of that time in confinement. Petitioner said he pled guilty because he was "backed against the wall" and was "misled" regarding the length of time he would have to serve.

Trial counsel testified that he met with Petitioner five to ten times during his representation. Trial counsel utilized the State's open-file discovery policy and shared the discovery materials with Petitioner. Trial counsel believed he obtained all of the information he could about the case. He said he interviewed the witnesses Petitioner suggested, but some of them were not willing to testify the way Petitioner wanted. Trial counsel also said that he filed a motion for change of venue and that he could have appealed the denial of the motion had Petitioner not pled guilty.

Trial counsel stated that he explained to Petitioner the charged offense of first degree murder and the lesser-included offenses of second degree murder and voluntary manslaughter. Additionally, he told Petitioner about the possibility of an acquittal. He opined that with "proper presentation," Petitioner could have been convicted of voluntary manslaughter. However, in his view, the jury was very conservative. Counsel was concerned that the jurors would look unfavorably on Petitioner because he "left two small children in a bedroom locked with the dead body." Counsel further noted that the State's case was well-prepared and included Petitioner's cellmate who would testify that Petitioner admitted he killed the victim intentionally. Taking these factors into consideration, trial counsel advised Petitioner to plead guilty. Trial counsel said he tried to negotiate an agreement allowing Petitioner to plead guilty to voluntary manslaughter, but the State would not agree to any offense below second degree murder.

Trial counsel said that from the beginning of his representation of Petitioner, they had discussed the possibility of a guilty plea. On the day of the plea, counsel further discussed the possibility with Petitioner and one of his sisters. Counsel said Petitioner had a heart condition and was concerned that a twenty-five year sentence was like a life sentence. Counsel "strongly advised" Petitioner to accept the plea. Counsel said he told Petitioner that if he pled guilty, he would have to serve one hundred percent of the sentence in confinement. Counsel acknowledged that he might have told Petitioner that the State "would calculate it at 85%," but he denied telling Petitioner that he could be out of prison in five or ten years.

Counsel stated that he did not know of any additional motions he should have filed. Counsel said he properly advised Petitioner and did everything he could for Petitioner. Counsel said Petitioner never voiced any complaints regarding his representation.

After considering the testimony given at the post-conviction hearing and the transcript of the guilty plea hearing, the post-conviction court found that Petitioner was fully informed of the sentence he would receive upon pleading guilty, that trial counsel adequately investigated the case, and that trial counsel met with Petitioner a sufficient number of times. Accordingly, the post-conviction court found that Petitioner failed to establish that his trial counsel was ineffective. On appeal, Petitioner challenges this ruling.

## II. Analysis

Initially, we note that the State argues that Petitioner's appeal is not properly before this court. The State observes that the post-conviction court denied the petition on December 5, 2007, but Petitioner did not file a notice of appeal until November 24, 2008. In the interim, Petitioner filed two pro se motions for "delayed appeal," one of which the trial court granted, without the State's objection, on August 15, 2008. The State contends that the instant appeal should be dismissed because a "petitioner has no right to a delayed appeal in post-conviction."

Generally, "the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from." Tenn. R. App. P. 4(a). Clearly, Petitioner's notice of appeal was filed beyond the thirty-day time limit. A delayed appeal may be granted when a petitioner "was denied the right to an appeal from the *original* conviction in violation of the Constitution of the United States or the Constitution of Tennessee." Tenn. Code Ann. § 40-30-113(a) (2006) (emphasis added). However, "several panels of this court have addressed delayed appeals in the post-conviction context and determined that there is no entitlement to a delayed appeal from the denial of a petition for post-conviction relief." Billy G. Debow, Sr. v. State, No. M2008-00580-CCA-R3-PC, 2009 WL 605091, at *4 (Tenn. Crim. App. at Nashville, Mar. 10, 2009); see also Stokes v. State, 146 S.W.3d 56, 59 (Tenn. 2004); Timothy A. Baxter v. State, No. W2006-01667-CCA-R3-PC, 2007 WL 2822905, at *2 (Tenn. Crim. App. at Jackson, Sept. 26, 2007). Therefore, we have no jurisdiction to hear a delayed appeal regarding the denial of post-conviction relief.

However, we note that "in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). "In determining whether waiver is appropriate, this [c]ourt will consider the nature of the issues presented for review, the reasons for and the length of the

delay in seeking relief, and any other relevant factors presented in the particular case." State v. Markettus L. Broyld, No. M2005-00299-CCA-R3-CO, 2005 WL 3543415, at *1 (Tenn. Crim. App. at Nashville, Dec. 27, 2005). We conclude that waiver is appropriate in this case; therefore, we will address Petitioner's claims.

To be successful in a claim for post-conviction relief, a petitioner must prove all factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

Petitioner contends that his trial counsel was ineffective. A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any

particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). In the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

On appeal, Petitioner specifically maintains that trial counsel failed to adequately investigate the case, interview witnesses, or explain the plea agreement. However, trial counsel's testimony, which was accredited by the post-conviction court, belies Petitioner's contentions. Trial counsel testified that he informed Petitioner of the charges and potential sentences he could receive if convicted at trial. Trial counsel maintained that he explained fully the sentence Petitioner would receive upon pleading guilty to second degree murder. Trial counsel said that he interviewed the witnesses Petitioner suggested and that those witnesses would not testify in the manner Petitioner wanted. Additionally, as the post-conviction court noted, the guilty plea hearing reflects that the trial court informed Petitioner prior to the plea that he would have to serve one hundred percent of his twenty-five-year sentence in confinement before becoming eligible for release. Petitioner agreed that the trial court's explanation of the plea reflected his understanding of the conditions of the plea. Based upon the foregoing, the post-conviction court found that counsel was not ineffective in representing Petitioner. There is nothing in the record to preponderate against this finding. Petitioner did not produce any evidence at his post-conviction hearing that trial counsel could have discovered through further investigation, nor did he present the witnesses he claims trial counsel should have interviewed. Generally, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We may not speculate on what benefit any additional witnesses might have offered to Petitioner's case, nor may we guess as to what evidence further investigation may have uncovered. Id. Accordingly, Petitioner failed to demonstrate prejudice in this regard, and, therefore, the post-conviction court did not err in finding that trial counsel was not ineffective.

### III. Conclusion

We affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE